IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Guy Marion Williams, ) | C/A No.: 1:12-1946-RMG-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| Mr. D. Mercado, ) | |
| ) | |
| Defendant. ) | |

Guy Marion Williams ("Plaintiff"), proceeding pro se and in forma pauperis, brings this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).[1] Plaintiff alleges that defendant Daniel Mercado used excessive force against him during Plaintiff's incarceration at the Federal Correctional Institution in Williamsburg, South Carolina ("FCI-Williamsburg").[2] Mercado is a Recreation Supervisor at FCI-Williamsburg. This matter comes before the court on Mercado's motion for summary judgment. [Entry #71]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Mercado's motion. [Entry #72]. The motion having been fully briefed [Entry #75], it is

---

[1] *Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006).

[2] Plaintiff originally named Warden Owens, Associate Warden Johnson, Captain Rayburn, Lieutenant Dunbar, Dr. Massa, and Physician Assistant Fish as defendants in this action, but they were dismissed on May 2, 2013, by order of the Honorable Richard M. Gergel, United States District Judge.

ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge grant Mercado's motion for summary judgment.

I.     Factual and Procedural Background[3]

Inmates are allowed to have photographs taken in the recreation department, but recreation staff review the photographs prior to issuing them to the particular inmate who has purchased the pictures. [Entry #31-4 at 2]. On January 31, 2011, Mercado and Sports Specialist R. Hall were reviewing photographs when they noticed that Plaintiff was wearing altered clothing (a Yankees logo t-shirt) in the photographs. *Id*. Mr. Hall issued Plaintiff an incident report for possession of contraband [Entry #31-7]. The confiscated items, including the pictures, were forwarded to Dunbar, who conducted the initial investigation of the incident report. [Entry #31-4 at 2]. After talking to Plaintiff about the reports, Dunbar gave the photographs to Plaintiff and kept the confiscated t-shirt to support the incident reports.

On February 1, Mercado saw that Plaintiff still had the pictures, and asked Dunbar why the pictures were given to Plaintiff. *Id*. at 3. Dunbar explained that he did not see a

---

[3] Defendant's version of the facts greatly varies from the recitation of facts in Plaintiff's verified complaint. In this circuit, verified complaints by pro se prisoners are to be considered as affidavits when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Therefore, the court construes all material factual disputes in favor of Plaintiff as the non-moving party.

2

confiscation form for the photographs so he gave the pictures back to Plaintiff. *Id*. Mercado explained that the photographs were contraband and not authorized to be taken or be in the possession of Plaintiff, and Dunbar agreed that he should not have given Plaintiff the pictures. *Id*. Mercado told Dunbar that he would get the pictures back and give them to Dunbar to attach to the incident reports. *Id*. Mercado then found Plaintiff in the hobby craft room and informed him that he was not authorized to have the pictures in his possession. Plaintiff stated he did not have the pictures. *Id*. Mercado gave Plaintiff a direct order to give him the pictures, but Plaintiff refused. *Id*. Mercado observed what looked like photographs in Plaintiff's shirt pocket, so he ordered Plaintiff to turn around for a pat search. *Id*. Plaintiff complied by spreading his legs apart and outstretching his arms for the pat search. Mercado touched Plaintiff's left shirt pocket and questioned Plaintiff on the contents of the pocket, to which Plaintiff responded that it contained the photographs. [Entry #1 at 8].

Plaintiff and Mercado do not agree on what happened next. According to Plaintiff, Mercado then "placed a choke-hole around the Plaintiff's neck squeezing on the Plaintiff's wind-pipe, cutting off his oxygen" and demanded the pictures. *Id*. Plaintiff alleges that before he could comply, Mercado slammed him onto the concrete floor, jumped on him, and began to pound on his face and mouth. *Id*. Plaintiff alleges that Mercado's use of force led to his partial denture breaking into three pieces, causing them to perforate through his lips and throat. *Id*. Plaintiff alleges that he tried to free himself from Mercado's blows, but Mercado managed to slam Plaintiff back down on the ground and to continue hitting Plaintiff's face. *Id*. at 9. Plaintiff claims he again tried to escape, at

3

which point Mercado began to strangle Plaintiff from behind. *Id*. Plaintiff alleges he managed to escape Mercado's grasp, picked up the photos, and fled the room. Plaintiff alleges he was then denied medical treatment. *Id*.

According to Mercado, when he reached for the photographs, Plaintiff grabbed his hand forcefully in defiance. [Entry #71-3 at ¶ 2]. Mercado alleges he was trying restrain Plaintiff on the floor when Plaintiff hit him in the head and ran away. *Id*. at ¶¶ 6–7. Mercado attests that while his hands may have approached Plaintiff's neck, it was only in an attempt to restrain Plaintiff to avoid a more dangerous situation. *Id*.

Mercado submitted a video of the encounter [Entry #76], and both Plaintiff and Mercado contend the video supports their version of events. The video shows the hobby craft room through the windows of the room, but the bottom few feet of the room are obscured by a wall. *See* Entry #76. Within seconds of Mercado beginning to pat down Plaintiff, the two move out of view of the camera. *Id*. at 00:34. For the next roughly twenty seconds, Plaintiff and Mercado's body are blocked by the wall, but the video shows Mercado's head moving around the corner of the room, consistent with engaging in a struggle. *Id*. Eventually, Plaintiff gets up from the floor, strikes Mercado, and then runs out of the room after picking up his pictures. *Id*. at 00:52. Also during this time, several inmate bystanders turned to look towards Plaintiff and Mercado. *See generally* Entry #76. During the confrontation, a few inmates are in the hobby craft room with Mercado and Plaintiff and many others are watching the incident from outside of the room. *Id*.

Immediately following the incident, Mercado called for assistance. [Entry #31-4 at

¶ 13]. Other staff responded to Mercado's requests and located Plaintiff in the recreation yard. [Entry #31-15]. Responding staff physically restrained Plaintiff by placing him on the ground and in handcuffs. *Id.* Plaintiff was then medically assessed. [Entry #76; #31-12].

II.     Discussion

    A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

Plaintiff claims Mercado used excessive force against him in violation of the Eighth Amendment. It is well established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 5 (1992).

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "'[w]hen prison officials maliciously and sadistically use force to cause harm'. . . 'contemporary standards of decency are always violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical

punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

However, courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." *Id.* at 322.

The Supreme Court has directed courts to balance several factors in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

Here, it appears that some application of force was necessary, as Plaintiff does not dispute that he refused to give Mercado the pictures when directed, and Mercado was forced to perform a pat down. It is evident from the video that there was a struggle

7

between Plaintiff and Mercado immediately after Mercado initiated the pat down, and Mercado was therefore justified in applying force to gain control of Plaintiff. The video also shows that Mercado did not use more force that was necessary. Assuming Plaintiff's allegations that Mercado choked him and punched him several times are true, Mercado's use of force was nonetheless not so great that it prevented Plaintiff from breaking from Mercado's hold, striking him, and running out of the hobby craft room into the recreation yard. Because Mercado failed to restrain Plaintiff, he could not have used more force than was necessary under the circumstances of this case.

With regard to his injuries, Plaintiff was examined by medical personnel after correctional officers used force against him on the recreation yard, and such examination was videotaped. [Entry #76; Entry #31-12]. The doctor noted abrasions to Plaintiff's left ear, left and right temples of his face, right knee, and left wrist.[4] Plaintiff was otherwise found to be in no acute distress. *Id*. The video evidence directly contradicts Plaintiff's allegation that Mercado caused his partial dentures to perforate through his lips and throat. [Entry #76].

Mercado reasonably perceived a safety threat to himself and to other inmates, many of whom were in the surrounding area. In his declaration, Mercado stated: "I was faced with a non-compliant inmate, in the same room with other inmates, and other inmates in the surrounding area. For my safety and the safety of those inmates around, I needed to gain control of inmate Williams, while ensuring other inmates did not get

---

[4] There is no evidence showing whether Plaintiff sustained such abrasions from the incident with Mercado or from the responding officers' use of force in the recreation yard.

involved." [Entry #71-3 at ¶ 4]. The video confirms Mercado's account of inmates in the room and surrounding area. [Entry #76]. Finally, the undersigned considers the efforts to temper the severity of the force applied. Here, Mercado did not use so much force that he was able to restrain or gain control of Plaintiff, so he did not use more force than was necessary.

Under these circumstances, and as the video evidence shows, Mercado's use of force was not excessive, as he was unable to restrain Plaintiff. [Entry #76]. Therefore, after a balance of the *Whitley* factors, the undersigned recommends Mercado be granted summary judgment in this matter.

III.     Conclusion

For the foregoing reasons, it is recommended that Mercado's motion for summary judgment be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

September 27, 2013                                    Shiva V. Hodges
Columbia, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

9

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).